IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAURINA JO FORD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-22-159-GLJ |

# OPINION AND ORDER

Claimant Maurina Jo Ford requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations

1

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairments *are not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was forty-one years old at the time of the administrative hearing. (Tr. 45). She completed high school, and has past work experience as a child monitor. (Tr. 47, 67). Claimant alleges an inability to work since March 1, 2020, due to limitations imposed by anxiety, panic disorder, degenerative disc disease, diabetes, rheumatoid arthritis, high cholesterol, and a neck injury. (Tr. 20, 49).

### Procedural History

On April 29, 2020, Claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. On June 24, 2021, Administrative Law Judge ("ALJ") Laura Roberts conducted an administrative hearing and determined Claimant was not disabled in a written decision dated July 28, 2021. (Tr. 35, 41). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five. (Tr. 34). At step two she determined that Claimant had the severe impairments of obesity, lumbar degenerative disc disease, diabetes mellitus type II, generalized anxiety disorder, major depressive disorder, social anxiety disorder, and hypertension, as well as the nonsevere impairments of left elbow fracture, ovarian mass, and mild degeneration of the knee, and the medically determinable impairments of rheumatoid arthritis, high cholesterol, and carpal tunnel syndrome. (Tr. 22-

23). She found at step three that Claimant did not meet any Listing. (Tr. 23). At step four she found that Claimant had the residual functional capacity ("RFC) to perform light work except that she cannot climb ropes, ladders, or scaffolds; must avoid exposure to extreme hot, cold, or humid conditions; and can occasionally stoop, crouch, crawl, kneel, climb ramps and stairs, and balance on uneven, moving, or narrow surfaces. Additionally, she found Claimant can understand, remember, and carry out simple and detailed, but not complex, tasks and have only occasional interaction with coworkers and supervisors. Finally, she found Claimant could have no interaction with the general public, although contact is "okay," and that she cannot perform tandem or teamwork, but can adjust to occasional changes in work processes. (Tr. 25).[2] The ALJ concluded that, although Claimant could not return to her previous work, there was work she could perform in the national economy such as small product assembler, electronic accessories assembler, and inspector packer. (Tr. 35).

## Review

Claimant contends that the ALJ erred by failing to properly determine her RFC and failing to properly assess her medical source evidence. Specifically, Claimant contends the ALJ failed to consider her right arm injury when formulating the RFC, erred in finding Claimant's rheumatoid arthritis was non-medically determinable, and erred in her analysis

---

[2] An ambiguous portion of the RFC reads "She perform work involving any exposure to unprotected heights or dangerous moving machinery." (Tr. 25). Neither party addresses this, and it is not raised as an error on appeal. The Court likewise declines to address it.

of the state reviewing physicians' opinions. The Court finds these arguments unpersuasive, and the ALJ's decision must therefore be affirmed.

The medical evidence relevant to this appeal reveals that on October 12, 2018, Claimant saw APRN Talara Kay with complaints of joint pain. (Tr. 428). On October 16, 2018, APRN Talara Kay diagnosed Claimant with Rheumatoid Arthritis and prescribed methotrexate and folic acid. *Id.* Although Rheumatoid Arthritis was often listed among Claimant's ongoing problems, there is no evidence that Claimant refilled these prescriptions or sought further treatment for this diagnosis. (Tr. 339-340, 349-350, 618-619, 639, 656-657, 678-679, 696-697, 707-708). Claimant denied joint pain or stiffness on June 16, 2020, August 4, 2020, and January 1, 2021. (Tr. 599, 618, 697). On September 9, 2020, APRN Kay noted Claimant had no red or warm joints. (Tr. 780).

On October 6, 2020, Claimant suffered a non-displaced radial head fracture after falling on her left arm. (Tr. 719, 734). On December 12, 2020, imaging of Claimant's left wrist revealed that the osseous and joint structures were intact and without evidence of fractures or dislocations. (Tr. 1191). On December 17, 2020, PA Brandon Snider found tenderness and mild swelling around the injury with a thirty-to-forty-degree limitation to left arm extension as well as limited flexion past ninety degrees. (Tr. 1185). On January 14, 2021, PA Snider noted that Claimant was "doing well with [the] fracture" and that it was "healing nicely," with good flexion but still lacked about ten to fifteen degrees of full

extension. (Tr. 678). On April 1, 2021, APRN Kay noted Claimant's right[3] arm had mild pain and resisted wrist extension with the elbow in full extension, and mild pain during passive terminal wrist flexion with elbow in full extension. (Tr. 1043).

State examiners determined initially and on reconsideration that Claimant could perform the full range of light work with no additional limitations. (Tr. 78-79, 92-93). As to Claimant's mental RFC, state examiners found that Claimant could understand, recall, and perform simple and detailed tasks with routine supervision, concentrate through a normal work schedule, relate to others on a superficial basis, adapt to some changes in a work setting, and avoid hazards. (Tr. 81). Upon reconsideration, Dr. David Cooley, Psy.D., largely agreed but included further restrictions limiting Claimant from tasks over four steps, from complex tasks that require concentration for over two hours, and from all contact with the public. (Tr. 95).

In her written opinion at step two, the ALJ noted that Claimant alleged rheumatoid arthritis, but that the record did not contain objective evidence to support a diagnosis. (Tr. 23). At step four, the ALJ summarized Claimant's hearing testimony, and likewise gave a thorough summary of the medical evidence in the record. (Tr. 26-34). As to her physical impairments, the ALJ found the state reviewing physician findings of light work to be partially persuasive, but that additional limitations were more reasonable give her obesity in combination with her spine disorder. As to her mental impairments, the ALJ found the

---

[3] All other records relevant to an arm injury during this time refer to Claimant's left arm or do not specify which arm is injured. Claimant's testimony indicates that she had a rod placed in her right arm, though she does not mention the falling injury in her testimony. (Tr. 50).

state examiners' opinions persuasive and generally supported, but better reasoned on reconsideration which limited Claimant from public interaction. (Tr. 33).

Claimant first argues that the ALJ failed to consider both her right elbow injury and her rheumatoid arthritis at step two and then necessarily when formulating the RFC at step four. As to her right elbow, she points in support to the record noting Claimant lacked about ten to fifteen degrees of full extension on January 14, 2021, following an October 2020 fall. (Tr. 678). The treatment note continues, however, that the fracture was healing, that she could resume normal activity as she can tolerate, and that follow up would be on an as-needed basis "since she is doing so well." *Id.* Claimant asserts without support that the orthopedist never found she regain full function of the right elbow, although there is also no evidence that she did *not* regain full function as there are no further treatment records on this issue. The record indicated the orthopedist expected Claimant to resume normal activities, and the ALJ determined that this impairment would have only a minimal effect on Claimant's ability to perform work-related activities. Claimant contends that the ALJ erred in finding that Claimant's rheumatoid arthritis was a non-medically determinable, but that even if the characterization is accurate, the ALJ nevertheless should have accounted for it in formulating the RFC.

As has been stated repeatedly, any error in finding additional severe impairments is harmless because the ALJ did find Claimant had multiple severe impairments (obesity, lumbar degenerative disc disease, diabetes mellitus type II, generalized anxiety disorder, major depressive disorder, social anxiety disorder, and hypertension), which obligated the ALJ to then consider *all* of her impairments (severe or otherwise) in subsequent stages of

the sequential evaluation, including the step four assessment of the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. In this case, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting her reasons, *i.e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record.  A one-time range-of-motion limitation on a healing fracture where a physician expects a Claimant to resume normal activity is insufficient to support further limitations.  Additionally, Claimant asserts the ALJ ignored that the state reviewing physicians found she had a diagnosis of rheumatoid arthritis, but in reality those notes simply recite Claimant's own allegation of the diagnosis.  (Tr. 75, 76, 79, 85, 89, 92).  The claimant has pointed to no other evidence in the record of further limitations arising from these alleged impairments, aside from her own assertions, and the ALJ's determination here is entitled to deference.  The Court therefore finds no error. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") (citation omitted).

As part of her RFC challenge, Claimant argues that the ALJ failed to resolve inconsistencies between the state examiners' opinions at the initial and reconsideration level, each of which she determined to be "partially persuasive" and "overall supported"

8

in determining the RFC. (Tr. 33). For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds that the ALJ's treatment of the reviewing opinions here was appropriate in analysis as to consistency and persuasiveness. At step four, the ALJ noted

the physical opinions were partially persuasive but added limitations in light of her obesity and spine disorder. Furthermore, he noted they did not personally examine Claimant or order any further diagnostic studies, nor did they have the complete longitudinal medical records. (Tr. 33). On appeal, Claimant nevertheless contends that the physicians, and therefore the ALJ, failed to account for her rheumatoid arthritis, with these opinions. However, the ALJ specifically stated how she accounted for each of her limitations; she simply did not find them disabling, as is the claimant's contention. Thus, the ALJ thoroughly considered all the opinion evidence in the record and gave reasons for not including further limitations in her RFC. And the claimant has pointed to no medical documentation not addressed by the ALJ that *does* provide further limitations. Because she points to no evidence other than her own assertions, the Court likewise declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). Thus, the ALJ's opinion was sufficiently clear for the Court to evaluate it. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). *See also Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Finally, Claimant contends that the ALJ's assigned RFC failed to account at step four for moderate limitations in her ability to understand, remember, and carry out detailed instructions that were identified at step three, which, she asserts, affects her ability to perform both detailed *and* complex tasks.  At step three, the ALJ indeed found moderate limitations in understanding, remembering, and applying information, as well as concentrating, persisting, and maintaining pace. (Tr. 24-25).  At step four as relevant here, the ALJ summarized the state reviewing physician findings, but did not discuss or distinguish where the initial reviewer found she could recall and perform simple and detailed tasks with routine supervision (Tr. 81), and on reconsideration this was clarified to state "simple and detailed tasks of 1-4 steps" (Tr. 95).  Ultimately, the ALJ determined Claimant had the RFC to, *inter alia*, understand, remember, and carry out simple and detailed, but not complex, tasks, with an SVP of 1-4.  Though similar, "detailed" and "complex" are not equivalent terms, and "[t]he ability to perform detailed instructions is different than, and not on a continuum with, the ability to perform complex instructions." *Guy v. Berryhill*, 2018 WL 1415911, at *3, n.6 (W.D. Okla. Feb. 26, 2018).  Furthermore, the Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).  Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Id.*, at 1204, the Court finds here that the RFC limitations adequately accounted for her moderate limitations.  *See Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2016)

("Unskilled work does not require . . . the ability to maintain attention and concentration for extended periods, an area in which Dr. Tabor noted a moderate limitation.").

Here, the ALJ identified at step five three jobs Claimant could perform, all having an SVP of 2 *and* a reasoning level of two. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." See DICOT §§ 706.684-022, 729.687-010, 559.687-074. This reasoning level is consistent with performing simple tasks. *See Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two."). Thus, even in the event of an error by the ALJ, it would be harmless here as the jobs identified remain within the realm of simple, and not even detailed, work. *See, e. g., Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have

12

determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 18th day of September, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**